# SUPREME COURT OF TENNESSEE

AT THE

## JACKSON, APRIL TERM, 1920.

---

### WESTERN DIVISION

---

*(Continued from Vol. 142.)*

---

MRS. LIDA McCULLEY *v.* M. B. HARDEMAN *et ux.**

*(Jackson.* April Term, 1920.)

1. **HUSBAND AND WIFE.** Conveyance by husband of property excepted by antenuptial contract not fraud.

Where a few days before celebrating the marriage the parties entered into a contract providing that the prospective wife should not share in specified real property, the husband's conveyance before marriage of such property was not a fraud on any of the marital rights of the wife. (*Post, pp.* 1-6.)

2. **DOWER.** Statutes in derogation should be strictly construed.

A statute in derogation of the widow's common-law right of dower

---

*The question of dower rights in property conveyed before marriage is discussed in note in 48 L. R. A. (N. S.), 512.

On power to bar dower by antenuptial agreement sufficient in equity, but not conforming to any of the statutory methods of barring dower, see note in 17 L. R. A. (N. S.), 866.

should be so construed in so far as to protect her fully in said right. (*Post. pp.* 6-10.)

3. DOWER. Essentials are marriage, death, seizin and possession.

Under Shannon's Code, section 4139 (Act of 1784), providing that if any person die intestate leaving a widow she shall be entitled to dower in all the lands of which her husband died seized and possessed or of which he was the equitable owner, three things are essential to dower: Marriage, death, seizin, and possession. (*Post, pp.* 6-10.)

4. DOWER. Widow not entitled to dower in lands which husband conveyed before marriage, where it was agreed she should take no interest.

Under Shannon's Code, section 4139, declaring a widow shall be entitled to dower in lands of which her husband died seized and possessed, or of which he was the equitable owner, and section 4140, declaring that she shall be entitled to dower in lands mortgaged or conveyed in trust, when the husband dies before foreclosure, as well as section 4149, declaring that any conveyances made with intent to defeat the widow's dower shall be void, a widow is not entitled to dower in lands which the husband conveyed before marriage, where an antenuptial agreement provided that she should take no interest in such property, for it cannot be said that the lands were conveyed with intent to defeat her dower, and, undoubtedly, the husband was not seized of the land at the time of the marriage or thereafter. (*Post, pp.* 6-10.)

Cases cited and approved: Apple v. Apple, 38 Tenn., 348; Lunsford v. Jarrett, 79 Tenn., 194; Bond v. Bond, 84 Tenn., 307; McIntosh v. Ladd, 21 Tenn., 465; Reynolds v. Vance, 48 Tenn., 345. Code cited and construed: Sec 4139 (S.).

---

FROM CHESTER.

---

Appeal from the Chancery Court of Chester County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. J. W. Ross, Chancellor.

BOND & BOND and J. I. GALBRAITH, for plaintiff.

W. G. TIMBERLAKE, for defendants.

MR. SPECIAL JUSTICE CASSELL delivered the opinion of the Court.

Bill in chancery court of Chester county by complainant, Mrs. Lida McCulley, against Hardeman and wife for the purpose of setting aside certain conveyances hereinafter mentioned, for the purpose of having a dower and homestead set apart to the complainant in two certain lots and storehouses in Henderson, Tenn., formerly owned by her deceased husband, J. A. McCully, and for the purpose of setting up and enforcing a certain contract between herself and McCully, and in conformity with the allegations of her bill the relief asked for was both specific and general. To this bill defendants interposed a demurrer, the various grounds of which were overruled, with the exception of the first ground, which was sustained by the chancellor, and thereafter the defendant filed an answer denying all of the material facts alleged in the bill; especially was it denied that defendants were guilty of or party to any fraud; and it was denied that complainant was entitled to any homestead and dower in the two lots and store buildings. The chancellor decreed that the complainant was entitled to dower in the two brick storehouses above mentioned, and set the conveyance aside which McCulley had made to Hardeman and wife on June 3, 1915, and decreed the complainant certain rents issuing therefrom, but expressly exonerated the defendants, Hardeman and wife, from any fraud. The chancellor

also held that McCulley left fourteen acres of land near Henderson, and a homestead was decreed complainant out of this land. No other relief was granted by the chancellor, who taxed the costs three-fourths to the complainant and one-fourth to the defendants. From this decree Hardeman and wife as well as complainant perfected appeals to the court of civil appeals, and both parties have filed bills of exception, which brought up for consideration questions as to admission and exclusion of certain evidence. The court of civil appeals has reversed the chancellor in allowing the complainant a right of dower in the two storehouses and lots in question, and this, with the validity and effect of the prenuptial contract, is the only material question before us for consideration, as we view the record. Complainant has filed a petition for writ of *certiorari* to this court. The facts in the case so far as pertinent to this inquiry are as follows: McCulley, a widower seventy-six years old, entered into a prenuptial contract with Miss Raines on the 3d day of June, 1915, as follows:

"Humboldt, Tenn., June 3, 1915.

"Article of agreement entered into this day by J. A. McCulley and Miss Lide Raines regarding real estate and any other effects in the name of J. A. McCulley in case they are married.

"A list of property and effects are herein appended—

"One small farm in suberbs of Henderson, Tenn., worth $1000.

"Two shares of stock in Peoples Savings Bank, Jackson, Tenn.

"Six shares of stock, at Henderson, Tenn., in Peoples Savings Bank. (Half paid in.)

"Bank of Commerce, Jackson, Tenn. Two shares of stock ($200.00).

"Nuckles Fite Grocery Co., Jackson, Tenn. Two shares of stock ($100.00).

"Two thousand dollars worth of notes and accounts uncollected.

"The above notes and accounts are supposed to be worth $500.00.

"This includes the property of J. A. McCulley.

"It is unincumbered and also excludes one lot and two small store houses in Henderson, Tenn. That both parties are to use the proceeds of rents at will and both parties agree that both parties can sell or dispose of at any time. The above agreement is made and entered into in good faith and remains in full force as long as both parties live. In case of death of either party the aforesaid property and effects and all crude interests goes to the other party during their natural life, then disposed of by the one as may be directed. The above agreement & contract does not include any property that belongs to Miss Lide Rains in real estate and other effects. Here unto fix our signatures—
"Atest:    W. L. Coplin.          J. A. McCulley.
      "Mrs. L. G. Coplin.          Lide Raines."

On the same day that the above contract was entered into, in consideration of love and affection, a deed was executed to the two storehouses and lots in Henderson to M. B. Hardeman and wife by McCulley (Mrs. Hardeman was an adopted child of McCulley and his first wife), and this deed was registered on June 7, 1915. On June 6th Miss Raines and Mr. McCulley were married and lived together as husband and wife until

the following spring when he died, and, so far as the records show, she was a good and faithful wife and gave him every attention during his sickness.

The question before us now is whether there is any error in the holding of the court of civil appeals in reversing the chancellor as to the two storehouses and lots, and we are of the opinion that there is not.

The right of Mrs. McCulley to recover in this cause two storehouses and lots depends on her successfully maintaining one of two propositions: First. Was the deed from McCulley to Hardeman and wife a fraud in fact or in law on complainant's rights. Upon this point the marriage contract is of much evidential importance.

Under this contract this property is expressly excluded from the operation of the same, and hence she cannot recover an interest in this property by virtue of this prenuptial contract, nor is the conveyance of the property to Hardeman and wife by deed of June 3, 1915, a fraud on any rights 'of property that became vested in her by her marriage with McCulley, for it was never intended she should have any interest in this property.

Second. Her rights, if any, in these properties must be based on her right of dower in the property of Mc-Culley of which he was seized at the time of his death, and on the determination of this question hinges the result of this controversy.

We must now go somewhat into the history of the origin and meaning of dower, so as to know its full purpose, for an intelligent disposition of this feature of the case.

"The origin of dower is involved in much doubt and obscurity. Its introduction in England is of such antiquity that its origin cannot be traced with any degree of certainty. Blackstone does not attempt to definitely declare its origin, but rests content with the statement that in England it may be the relic of any early Danish custom. It is certain that dower is recognized in the Magna Charta of King John granted June 15, 1215, and subsequently amended and confirmed in the reigns of Henry III and Edward I. In the Magna Charta, as thus amended and confirmed, the law of dower in its modern sense and enlarged extent, as applying to all the lands of which the husband was seized during the coverture, was clearly defined and firmly established. Since the Magna Charta was declaratory of existing customs and regulations and was enacted for their preservation, dower must have existed as a distinct institution prior to the enactment of that instrument. Coke says that it was certainly the law of England before the Norman conquest that a widow should continue a whole year in her husband's house, after his death, within which time her dower was to be assigned to her.

"In many of the United States dower, exactly or substantially as it existed at common law, has been recognized as in force or adopted by judicial declaration or by express constitutional or statutory provisions, while in others it has been very materially changed by statute.

"A statute in derogation of the widow's common-law right of dower should be so construed in so far as to protect her fully in said right, for, as has often been said, dower is a legal, equitable, and moral right favor-

ed in high degree by law and next to life and liberty held sacred.''

Coke, Litt. 124b; 14 Cyc., 885.

Our statutes in Tennessee appertaining to dower are as follows (section 4139 of Shannon's Code):

''If any person die intestate, leaving a widow, she shall be entitled to a dower in one-third part of all the lands of which her husband died seized and possessed, or of which he was equitable owner.''

The above statute was taken from the Acts of the General Assembly of the State of Tennessee of the year 1784.

Now, under this section, in order for a widow to obtain dower in a one-third part of the lands of her husband three things are requisite: Marriage, death, seizin, and possession. *Apple* v. *Apple,* 1 Head, 348, 350 and 352; *Lunsford* v. *Jarrett,* 11 Lea, 194; *Bond* v. *Bond,* 6 Lea, 307.

Under another statute it is provided: ''She shall also be entitled to dower in lands mortgaged or conveyed in trust to pay debts, when the husband dies before foreclosure of the mortgage or sale under the deed.'' Section 4140, Shannon's Code.

It is further provided in the statutes as follows: ''Any conveyances made fraudulently to children or others, with an intent to defeat the widow of her dower, shall be void, and such widow shall be entitled to dower in the land so fraudulently conveyed as if no conveyance had been made.'' Section 4149, Shannon's Code.

Now, when we notice closely the wording of the above statute we observe that the conveyance must be made with intent to defeat the widow of her dower in

order to be void. It has been held by this court that
the conveyance sought to be set aside must have been
made with actual intent to defraud the widow of her
dower. *McIntosh* v. *Ladd,* 1 Humph., 465; *Reynolds* v.
*Vance,* 1 Heisk., 345. This being true, how can it be
said that there was any intent to defeat Mrs. McCulley
of any interest in these houses and lots when, as a
matter of fact, before the marriage (in the marriage
contract) she had expressly agreed that this very prop-
erty should not be subject to her marital rights? This
being so, the deed from McCulley to Hardeman was
in no way a fraud on her rights, nor did it have the
effect in law to deprive her of any of her property
rights. Complainant had expressly agreed that as to
this particular property she was to have no claim.

We do not see how any court of equity, in the face of
her own written admitted prenuptial agreement, can
give her dower in property in question.

Did McCulley die seized of the property in question?
If he did, then complainant has a dower therein. On
June 3d he executed and delivered to M. B. Hardeman
and wife a deed for the same. The effect of the delivery
of this deed was to vest in Hardeman and wife title in
fee to the two storehouses and lots, and, after the deed
was delivered to Hardeman, McCulley has no legal or
equitable estate in said property, and even though com-
plainant married McCulley three days later, yet the
property had been deeded away and McCulley, neither
at the time of the marriage, nor some nine months
later (at the time of his death), was seized of the es-
tate, so no dower rights vested.

McCulley v. Hardeman.

We therefore are content to affirm the court of civil appeals, and hence the petition for writs of *certiorari* will be denied. The costs of this court and of the courts below will be adjudged against the complainant, Mrs. McCulley.