D. C. WILHITE, Administrator, v. MRS. FLORENCE FARLEY, et al.

Middle Section.   June 18, 1932.

Petition for Certiorari denied by Supreme Court, January 7, 1933.

Holladay, Holladay & Clark, of Cookeville, for complainant.
Thompson & Haile, of Cookeville, for defendant.

DeWITT, J. The question of proper allotment of dower to Mrs. Florence Farley in the real estate of her late husband, R. L. Farley, is presented for determination. The original bill was filed by the administrator with the will annexed of R. L. Farley, who died in

January, 1931. His estate was insolvent. The bill was filed as a general creditors bill. The only real property of substantial value owned by the decedent was an elaborate residence on Dixie Avenue in Cookeville. Mrs. Farley, the widow, dissented from the will, a year's support and the exempt personal property were assigned to her. In her answer to the bill in this cause Mrs. Farley waived homestead and asserted only her dower interest, praying that commissioners be appointed to set apart and assign to her dower in all the lands of which her husband died seized and possessed. In the bill it was alleged that Mr. Farley owned the tract of about four acres in Cookeville, containing the residence; also a lot in Cookeville worth about $100 or $150. It was averred in the answer of Mrs. Farley that Mr. Farley also owned a mill property in Crossville. However, the property in which it is sought to have dower assigned is the residence property. It is fairly to be inferred from the pleadings that the mill property in Crossville was owned by a corporation, and that Mr. Farley owned the capital stock thereof. It was, anyhow, very heavily encumbered.

The cause was heard by the Chancellor, who rendered a full finding of facts in writing. The evidence upon which this is based is not in the record and the facts will be considered as found by the Chancellor. Certain of his findings are as follows:

"The real estate left by Mr. Farley on this street consisted of a frontage of perhaps a little less than two hundred feet on Dixie Avenue, and the property running back in the neighborhood of six hundred feet to the main line of the T. C. Railroad. The lot on which the house is located consists of some four acres of land. The rear line next to the railroad is not parallel with the front. It is a longer line, due to the fact that the railroad runs eastwardly of north and the front line is more nearly north, south. The house, built in 1922 or about that time at a cost of not less than twenty-six thousand dollars and probably in excess of that amount, is set well back from the front of the lot, ninety feet or more, facing Dixie Avenue the long way of the house eighty feet or more parallel to Dixie Avenue. The house is of brick veneer construction, the outside finish of stucco and plastered inside with Spanish tile roof, full two stories high with a basement under a portion of it, finished inside with the best of material and the best of workmanship. Around this house, the plot of ground is set with shade trees and shrubbery. It was laid out by a landscape gardener and set in shrubbery at an expense of several hundred dollars, the shrubbery being in front and at the sides and back of the house to an extent of fifty or one hundred feet in the rear. The rear of the lot next to the railroad is low and at one time

there was on this part of the lot a fish pond maintained. The north line of the lot adjoins the property of A. G. Maxwell. The south line of the lot adjoins Seventh Street, a cross street of the town.

"This house is not so constructed that to any advantage it could be apportioned, one-third to the use of the widow for her lifetime, the lower floor consisting of reception and living rooms, dining room, kitchen, sun parlor and so forth, with a stairway leading to the bed-rooms overhead.

"The entire property is at this time, under present conditions, worth perhaps not exceeding fifteen thousand dollars, and its rental value would be at the outside figures, seventy-five dollars per month under present conditions.

"I find that the lot could not be advantageously partitioned. The lot could be divided without respect to the mansion house and some valuable lots could be laid off next to Seventh Street and there is room for a subdivision and laying off lots next to the railroad; to make lots in a subdivision valuable, they would necessarily have to front on Dixie Avenue, and to sell off frontage on this street in front of the property would greatly deteriorate the value of the estate; the house is a large house set well back in the property and surrounded by shrubbery and entirely in harmony with the plot of ground on which it sits. This harmony of the mansion house with its surroundings would be totally destroyed by the use of lots on either side in front of it next to Dixie Avenue, whether for residence or business purposes. Lots next to the railroad would hardly be marketable at any great value unless for produce houses, manufacturing business of such business as would locate along railroad tracks and a sale for purpose of this kind would injuriously affect this estate."

The position taken by the widow is that she is entitled as dower to one-third of this tract of four acres, including the mansion house, for and during the term of her natural life. She relies upon Shannon's Code, section 4142, which is as follows:

"And in said third part shall be comprehended the dwelling house in which the husband was accustomed and most generally to dwell next before his death, commonly called the mansion house, unless the widow agree that it shall not be included, together with the offices, outhouses, buildings and other improvements thereunto belonging or appertaining."

In the Chancellor's finding that this property as a whole was worth much more than it would be worth subdivided; that it would be a manifest injustice, both to the creditors and to the widow, to divide the estate; that to set apart one-third of the land, including the man-

sion house and not valuing the mansion house, would destroy the estate and make it impossible for any reasonable amount to be realized for the creditors, he took into consideration section 4143 of Shannon's Code, which is as follows:

"But if it appear to the Court assigning the dower that the whole of said dwelling house, outhouses, offices and appurtenances could not be applied to her use without manifest injustice to the children or other relations, then such part or portion thereof as the Court shall conceive will be sufficient to afford her a decent residence, due regard being had to her condition and past manner of life, shall be assigned to her."

The Chancellor construed the words "other relations," in said section as including the relation of debtor and creditor. He held that it would be the court's duty under the aforesaid sections so to allot the dower in kind as to include the mansion house, if that could be done without injustice to creditors, as there were no children and there was no prospect of benefit to any heir at law. He considered the application of Mrs. Farley to be illadvised. He concluded that to vest this estate for life in the widow, with the necessary expense for servants and upkeep, would be settling upon her a burden rather than a benefit. He was of the opinion that the most advisable and lawful way to allot the dower was to sell the property and invest one-third of the proceeds either in income producing property, or in a home for the widow during her life. In view of this he decreed as follows:

"Therefore, in order to so allot the dower, and fix the dower rights of Mrs. Florence Farley, as would be fair and just, both to her and to creditors of the estate, the Court offers her an election or selection of either of three methods,—namely:

"a: At her election the house may be rented pending her lifetime, to the end that one-third part of the rents may be applied to her use as same accrues, after paying the expenses of taxes, up-keep and insurance, and the execution of this trust.

"b: The property may be sold as a whole, and the amount of one-third of the net proceeds be put in a trust fund for the benefit of Mrs. Farley for her lifetime; the interest and income from said trust fund to be paid to her at appropriate times.

"c: At her election said trust fund of the full one-third part of said real estate may be invested in a suitable home for Mrs. Farley, to be selected and recommended by her, title to same to be decreed to her, and vested in her for the full period of her lifetime; the Court only reserving the right to have her selection approved by the Court, to the end that the interest of the creditors of said estate may be protected; as the remainder interest, or its value, will be a fund for the payment of debts."

Mrs. Farley declined to make an election and the Court thereupon ordered a sale of the property, subject to the widow's right to dower as necessary in order to pay debts. From this decree Mrs. Farley has appealed. By the assignments of error, the following propositions are presented:

First—that the Court had no discretion save to appoint commissioners to set apart the dower; and therefore it was error to decline to do so.

Second—that the widow's dower rights could not be invaded or impaired or affected by the rights of creditors.

Third—that it was error to require of the widow any election as to dower.

In dealing with issues made so difficult by the nature of the property and the sacredness of the rights of the parties affected, we are nevertheless governed by the statutes. A court of equity has no power to deviate therefrom, when correctly interpreted. These statutes, sections 4141-4144 of Shannon's Code, were enacted at a time when mansion houses almost universally stood on much larger tracts of land than that herein involved. There is no reported Tennessee decision upon the assignment of dower where the value of the mansion house bore an overwhelming proportion to the value of the land and rights of creditors were seriously involved. In order to apply the exception provided in section 4143 of Shannon's Code, the Chancellor interpreted the words, "other relations" therein to include creditors. Without this inclusion, the mandatory provisions of section 4142, "that in the third part the dwelling house, commonly called the mansion house, shall be comprehended," must be enforced, no matter how large a proportion in value of the real estate with improvements shall be set apart to the widow for her life, and how little would be left for the creditors of the insolvent decedent. In our opinion, the words, "or other relations" in section 4143 cannot properly be interpreted, in connection with the preceding words "the children," as including more than other parties than children. who are entitled to interests in the land by descent. The rule of ejusdem generis seems to apply in such interpretation. The word, "children," connotes a specific class of persons, and it is followed by the words, "other relations," which constitute a more general phrase but which referred to persons having an interest similar to that of children. It is also a legal maxim, "noscitur a sociis," that the meaning of the doubtful word may be ascertained by reference to the meaning of words associated with it. These are familiar rules of interpretation. The word "relations" is commonly used interchangeably with "relatives" although in a general sense it has much broader meaning. In Webster's New International Dictionary the word "relations" is defined as "in general sense, the being such and such with regard or

respect to some other thing, as the relation of master and servant," but when used in connection with a restrictive word, as ",children," although separated from it by a disjunctive, it must be treated only as a generic word describing a class of which the preceding word describes only a species. In other words, the words, "other relations" imply only an extension beyond the class known as children of those having a relationship as heirs with the decedent, and thereby have acquired some interest in the land.

The object in allowing dower is to furnish means and sustenance for the wife and younger children, if any, after the death of the husband and father; and dower is a right favored in high degree by law and next to life and liberty held sacred. McCulley v. Hardeman, 143 Tenn., 1, 223 S. W., 146. The rule has always been followed in this State that statutes are to be liberally construed in favor of the right to dower.

In Vincent v. Vincent, 1 Heisk., 333, the deceased husband owned a farm of 370 acres and no debts. He left a widow and five children. The commissioners allotted to the widow as dower about 86 acres after deducting the value of the house. The Supreme Court held that this was insufficient; that the value of the improvements was not to be considered; that the mansion house and other improvements could be allotted to the widow without injustice to the children. The cause was remanded for assignment of dower so as to include the mansion house, outhouses and other improvements without charging the widow with any part of the value thereof. It is complained that in such a case section 4142 was applicable. We have in the case before us no question of injustice to the heirs of Mr. Farley, for they are sui juris, are parties to this suit and are making no resistance to this claim of the widow. It is purely a contest with creditors.

In Puryear v. Puryear, 5 Bax., 641, the mandatory character of section 4142 was recognized. It must be borne in mind that we are dealing with the mansion house property and not with a farm or other large tract of land, or with profits from mineral lands (Lewis v. James, 8 Humph., 537; Clift v. Clift, 87 Tenn., 17, 9 S. W., 360), or with a storehouse and lot not fit for residence (Summers v. Donnell, 7 Heisk., 565), or with a case where the widow has given her consent to a sale. In James v. Fields, 5 Heisk., 394, we find a state of facts most nearly analogous to this case of all of those facts set forth in our reported decisions. The decedent owned in a small town nine lots adjoining each other, upon which were situated the house and outhouses occupied and enjoyed by him at the time of his death. He died insolvent. The commissioners appointed to allot and set apart the dower reported that upon examina-

tion they found that the property could not be so divided as to allot one-third part in value as dower, in consequence of the situation of the improvements upon said lots, and thereupon the Chancellor decreed that the widow was entitled "to the use, possession and enjoyment of the dwelling house, outhouses and improvement on the said lot of land, together with a sufficient amount of the land for the purposes of a garden, not to exceed in all, with the land covered by the dwelling house, outhouses and improvements, one acre, for and during the term of her natural life."

Certain creditors and the administrator appealed from that decree. The Supreme Court found that there was nothing in the allegations or in the proofs to show that the buildings constituted the bulk of the estate, or that they were so constructed that the different families might reside under the same roof without convenience so as to bring it within the rule laid down in Vincent v. Vincent, supra. The court remanded the cause on account of other issues, but directed that commissioners be appointed to assign dower in the mode required by law, giving to the widow the mansion house and other improvements specified in the statute, and one-third in value of the land, without including them in the estimate of value, for and during the term of her natural life. In view of the mandatory provisions of section 4142 and our interpretation that the excepting provisions of section 4143 do not include the relation of debtor and creditor, we do not feel warranted in interpreting the language quoted from James v. Fields, as meaning that if the buildings constituted the bulk of the estate, a different method of assigning dower would have been authorized. We are not unaware of the great force of the equity which therein appeared. The Chancellor's view in this case that the claim of the widow to one-third in value of the land including the mansion house without deduction, is "monstrous," is not wanting in our appreciation, but we are constrained by the statutory law. It is so well settled as to require no citation that the widow's dower is superior to the rights of unsecured creditors of her husband, and the statutes make no exception in favor of the creditors where the mansion house and other improvements constitute the bulk of the real estate.

Such a conclusion is shocking to our sense of that justice which is due to the creditors, but the fault, if any, is in the law, which must be followed, and not in the exercise of the powers of a court of equity. It may be that in the enactment of these old statutes such a condition as that before us was never in contemplation; but the law when applicable in its terms is over all.

These conclusions relate to a situation in which dower can be assigned in kind. The determination whether or not as to a given

property this can be done rests first, with commissioners appointed upon application of the widow, to allot and set apart dower. Shannon's Code, section 4154, Code of 1932, section 8371. The court cannot determine how to allot dower without the report of such commissioners. If the commissioners report that the property is of such character that one-third in value of the real estate, without including the value of the mansion house and other improvements, cannot be set apart so as to include the mansion house and other improvements, then the procedure must be under the provisions of Shannon's Code, section 4145 (Code of 1932, section 7729) that, "where a widow is entitled to both homestead and dower out of the same lands, the Commissioners shall set apart the homestead first and then one-third of the remainder of such lands as dower; and if the real estate is so situated that the homestead and dower cannot be set apart in kind, as herein provided, then such realty shall be sold." The further provisions are, "that the value of the homestead shall be invested in real estate for the benefit of said widow and minor children under the direction of the court having jurisdiction, to be held as a homestead, subject to the law governing homesteads, and dower shall be assigned out of the residue of said proceeds."

The statute in this section only regulates mode of assignment of both dower and homestead, but adds nothing to the rights of the widow. Lovelace v. Lovelace, 1 Shan. Cas., 428; Simpson v. Poe, 1 Lea, 703. Such regulation is upon the basis of what the widow is entitled to, as the statute plainly says; and any waiver by the widow of the right of homestead can make no difference. She cannot change the method of assigning dower by waiving homestead, because it is the status of the widow, what she is entitled to, not what she claims, that is the basis of the method. Whether or not such waiver operates to make the homestead interest available for creditors, we need not here decide. If, therefore, commissioners are appointed and they report that the real estate is so situated that the dower cannot be set apart in kind, then under the mandatory provisions of the statute, the real estate must be sold and dower assigned out of the proceeds. And, as aforesaid, this question must first be determined by commissioners before the court can act upon it.

It results that the decree of the Chancery Court must be reversed and the cause remanded to that court for further proceedings for appointment of commissioners and in conformity with this opinion. The costs of the appeal will be adjudged against the administrator.

Faw, P. J., and Crownover, J., concur.